**Hearing Date and Time: March 4, 2025, at 10:00 A.M.**
**Objection Deadline: February 27, 2025, at 4:00 P.M.**

**BELKIN · BURDEN · GOLDMAN, LLP**
*Attorneys for Board of Managers of 610 Park Avenue Condominium*
One Grand Central Place
60 East 42nd Street, 16th Floor
New York, New York 10165
(212) 867-4466
E-mail: jsolomon@bbgllp.com

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>16EF Apartment LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10159-mew |

**NOTICE OF HEARING FOR ORDER GRANTING CREDITOR BOARD OF MANAGERS OF 610 PARK AVENUE CONDOMINIUM STAY RELIEF, TO TERMINATE OR MODIFY THE AUTOMATIC STAY, AND FOR OTHER RELIEF**

**PLEASE TAKE NOTICE**, that a hearing will be held on **March 4, 2025**, at 10:00 a.m. (the "Hearing"), before the Honorable Michael E. Wiles, U.S.B.J., at the United States Bankruptcy Court, District Southern District of New York, One Bowling Green, Room 617, New York, NY 10004, **using the Zoom for Government® videoconferencing platform (link to instructions here) unless the Court orders otherwise (instructions below),** to consider the annexed motion of Board-Creditor, Board of Managers of 610 Park Avenue Condominium (the "Board"), seeking an order (a) pursuant to, without limitation, 11 U.S.C. §§ 362(d)(1) and (2), terminating, lifting, and/or modifying the automatic stay, which is currently in effect because of the above captioned Chapter 11 bankruptcy proceeding filed by Debtor, 16EF Apartment LLC ("Debtor"), to (a) allow the Board to pursue its remedies against Debtor in the New York State Courts including filing and

prosecuting the Board's lien against Debtor's condominium unit 16EF, located at 610 Park Avenue, New York, New York, and enforcing its rights to demand rent from Debtor's tenant in unit 16EF pursuant to § 339-kk of the Real Property Law of the State of New York; and (b) granting Board such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections or responses to the relief requested in the motion, if any, must be in writing, served upon the undersigned, and filed with the Bankruptcy Court, by 4:00 p.m. on **February 27, 2025**.

### Telephonic and Videoconferencing Instructions:

If you wish to appear in the hearing, you must register your appearance utilizing the Electronic Appearance portal located on the Court's website https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than 4 pm one business day before the hearing unless otherwise instructed by chambers. Upon prior request by any person, the Court will consider conducting the proceeding in a hybrid format that will permit unrestricted in-person observation of the proceeding in Judge Wile's courtroom.

Dated: New York, New York
February 14, 2025

                                        **BELKIN · BURDEN · GOLDMAN, LLP**

By: _____
     Jay B. Solomon, Esq.
     *Attorneys for Board of Managers of*
     *610 Park Avenue Condominium*
     60 E 42nd Street, 16th Floor
     New York, New York 10165
     (212) 867-4466 ex. 497
     E-mail: JSolomon@bbgllp.com

TO: 16 EF Apartment LLC
610 Park Avenue, Apt. 16EF
New York, NY 10065

Office of the United States Trustee – NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

**BELKIN · BURDEN · GOLDMAN, LLP**
*Attorneys for Board of Managers of 610 Park Avenue Condominium*
One Grand Central Place
60 East 42nd Street, 16th Floor
New York, New York 10165
(212) 867-4466
E-mail: jsolomon@bbgllp.com

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>16EF Apartment LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10159-mew |

**MOTION FOR ORDER GRANTING CREDITOR BOARD OF MANAGERS OF 610 PARK AVENUE CONDOMINIUM STAY RELIEF, TO MODIFY OR TERMINATE THE AUTOMATIC STAY, AND FOR OTHER RELIEF**

1.  Creditor Board of Managers of 610 Park Avenue Condominium ("Board")[1] respectfully submits this motion in support of its application for an order: (a) pursuant to 11 U.S.C. §§ 362(d)(1) and (2), terminating, lifting and/or modifying the automatic stay, which is currently in effect because of the above captioned Chapter 11 bankruptcy proceeding filed by Debtor, 16EF Apartment LLC ("Debtor"), to (a) allow the Board to pursue its remedies against Debtor in the New York State Courts including filing and prosecuting the Board's lien against Debtor's condominium unit 16EF (the "Unit"), located at 610 Park Avenue, New York, New York (the "Building"), and enforcing its rights to demand rent from Debtor's tenant in the Unit pursuant to

---

[1] All capitalized terms that are not defined herein have the meanings set forth in the declaration of Anthony Milstein submitted herewith.

§ 339-kk of the Real Property Law of the State of New York; and (b) granting Board such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

2. Debtor filed its barebones bankruptcy petition without required schedules, on the eve of the scheduled foreclosure sale of the Unit by the Debtor's lender, Axos Bank ("Axos"),[2] for the sole purposes of utilizing the automatic stay from the bankruptcy filing to frustrate the Board's right to demand rent from Debtor's tenant in the Unit pursuant to § 339-kk of the Real Property Law of the State of New York, and to delay the foreclosure sale of the Debtor's condominium unit based on the Board's prior lien for common charges.

3. A detailed recitation of the pertinent facts and history pertaining to the Debtor and the Unit are set forth in the accompanying Declaration of Anthony Milstein, dated February 14, 2025, which facts and history are incorporated herein and made a part hereof.

4. This motion should be granted and the automatic stay should be lifted in order to allow the Board to pursue its remedies against Debtor including (i) enforcing its rights to demand rent from Debtor's tenant in the Debtor's condominium unit 16EF (the "Unit"), located at 610 Park Avenue, New York, New York (the "Building"), pursuant to § 339-kk of the Real Property Law of the State of New York; (ii) filing and prosecuting the Board's lien against Debtor's Unit, and (iii) permitting the foreclosure sale of the Unit to proceed. Additionally, as discussed in detail below, the Board's motion should be granted because the *Sonnax Indus., Inc. v. Tri Component*

---

[2] Based on public records filed with the City Register (as defined below), Axos holds a first recorded mortgage lien against the Unit.

*Prods. Corp.* (In re Sonnax Indus., Inc.) factors heavily weigh in favor of granting Board stay relief.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the Proceeding and the within motion pursuant to 11 U.S.C. §301, 11 U.S.C. §362(d)(1) and (2), and Federal Bankruptcy Rule 4001(a)(1).

## FACTUAL BACKGROUND

### A.  The Parties

6. The Board is the board of managers and governing body of the unit owners of 610 Park Avenue Condominium ("610 Park"), located at 610 Park Avenue, New York, New York (heretofore defined as the "Building").

7. Debtor is a Delaware limited liability company and the owner of the penthouse Unit located in the Building.

### B.  Debtor's Defaults and the Foreclosure Case

8. 610 Park was formed and exists pursuant to a Declaration of Condominium (the "Declaration") that is dated March 5, 1998. The Declaration was filed and recorded with the Office of the City Register of the City of New York, County of New York (the "City Register"), on April 22, 1998, at Reel 2566, Page 426. The Declaration includes the By-Laws of 610 Park. (**Exhibit B** is a true copy of the 610 Park By-Laws).

9. The By-Laws contractually obligate Debtor to pay 610 Park monthly common charges and assessments (the "Charges") for the Unit. Debtor, however, has not paid Charges since **April 2021** and remains indebted to 610 Park. Debtor failed to pay its charges to 610 Park even though the Unit is rented to a third party and Debtor has been and is receiving **$67,000.00** in monthly rent (the "Rent") from the tenant (the "Tenant") who leases the Unit from Debtor.

6

10. Under the By-Laws, Debtor must pay 610 Park the Charges. If Debtor does not pay the Charges, Debtor must also pay 610 Park late fees, interests and the attorneys' fees 610 Park incurs due to Debtor's failure to pay the Charges.

11. Instead of paying the Charges and its other debts from the Rent, Debtor's sole member, Michael Strauss, has seemingly been siphoning the Rent to the financial detriment and prejudice of Debtor's creditors, including, but not limited to, 610 Park and Debtor's mortgage lender, Axos.

12. Given Debtor's protracted failure to pay the Charges, the Board filed a common-charge lien (the "Lien") against the Unit and, in February 2023, commenced a state court action to foreclose that Lien.[3] After a default judgment and a judgment of foreclosure and sale were entered against Debtor in the Foreclosure Case, the Board scheduled an auction sale of the Unit for October 14, 2024. The Board did not sell the Unit, however, because Axos purchased the Board's Lien for $369,689.64 (the "Purchase Price"), pursuant to a certain assignment agreement (the "Agreement") dated July 3, 2024. Under the Agreement, the Board assigned to Axos its Lien and its rights and interests in the Foreclosure Case. Axos was thereafter substituted as the plaintiff in the Foreclosure Case.

13. In the Foreclosure Case, Debtor unsuccessfully moved to vacate the default judgment and the judgment of foreclosure and sale. Axos thereafter scheduled a public auction sale of the Unit for January 29, 2025. By filing for bankruptcy on that same date, Debtor strategically commenced this bankruptcy proceeding to prevent the foreclosure sale from occurring.

---

[3] The lien foreclosure case is captioned: Board of Managers of the 610 Park Avenue Condominium v. 16EF Apartments, LLC and Mara Enterprises, Index # 151261/23, New York State Supreme Court, New York County (the "Foreclosure Case").

14. Debtor is indebted to 610 Park. As reflected in the ledger for the Unit (**Exhibit A**), Debtor currently owes 610 Park the sum of $26,684.62 (the "Arrears") in outstanding and unpaid Charges, which are due, owed and payable for the Unit for January 2025 and February 2025. Given Debtor's years-long nonpayment history, the Arrears will likely continue to escalate unless the automatic stay (the "Stay") that was triggered by Debtor's bankruptcy filing is vacated to allow the Board to pursue its remedies to recover the Arrears and the ongoing Charges for the Unit.

C. **Debtor's Leasing of the Unit and the Board's
Demand for Debtor's Tenant Pay the Rent to the Board**

15. In or May 2024, Debtor submitted to the Board a package pursuant to which Debtor sought to lease the Unit to Glen Scheinberg, the Tenant. Through Debtor's state court attorney, Thomas Frank, Esq., the Board initially informed Debtor that, under § 8.1 of the By-Laws, Debtor was prohibited from leasing the Unit while Debtor remained indebted to 610 Park. However, after Axos paid the Purchase Price to the Board, the Board allowed Debtor to lease the Unit to the Tenant..

16. Since the summer of 2024, Debtor has leased the Unit to the Tenant pursuant to a lease dated May 28, 2024 (the "Lease"). (**Exhibit E**). Pursuant to the Lease, which term expires on June 30, 2025, the Tenant must pay Debtor monthly Rent in the sum of $**67,000.00**

17. Despite receiving Rent from the Tenant since July 2024, Debtor failed to pay 610 Park any Charges that became due and were owed and payable for the Unit from and after July 1, 2024, to the present. Given the amount of arrears which have accrued on Debtor's account, pursuant to NYS Real Property Law § 339-kk, the Board instructed the Tenant to pay its Rent to the Board pursuant to a written notice dated October 22, 2024 (the "339-kk Notice"). (**Exhibit F**).

18. Pursuant to a written notice that is dated October 22, 2024 (the "16EF Notice"), the Board informed Debtor that the Board instructed the Tenant to pay its Rent to the Board until the Board received full payment of the outstanding Charges. (**Exhibit G**).

19. In November 2024 and in December 2024, the Tenant paid all or a portion of his Rent to the Board. (See **Exhibit A**). Despite those Rent payments and as noted earlier, Debtor owes the Board Arrears totaling $26,684.62. The Arrears represent unpaid Charges for January 2025 and February 2025.

20. Although the Tenant was willing to pay the Board a portion of his January and February Rent to cover the Charges for January 2025 and February 2025, Debtor vigorously objected (through Thomas Frank, Esq.) to the Tenant doing so and threatened the Board with a conversion claim and stay violation if the Board accepted rent payments from the Tenant.

21. The Board requests stay relief in order to pursue its remedies, including collecting the rent from the Tenant on account of the Arrears.

    **C.**    **The Bankruptcy Case**

22. On January 29, 2025, on the same day as the scheduled foreclosure sale, Debtor filed this chapter 11 bankruptcy proceeding *pro se*, which stayed the scheduled sale.

23. The bankruptcy petition is entirely barebone and contains no required schedules, including (but not limited to) Schedule D – Creditors who hold claims secured by property; or Schedules E/F – Creditors who have unsecured claims.

24. Debtor's bankruptcy case is nothing other than Debtor's bad-faith effort to hinder the foreclosure sale of the Unit.

**LEGAL ARGUMENT**

25. Pursuant to 11 U.S.C. §362(d)(1), an automatic stay may be terminated and/or modified for cause, including the lack of adequate protection of an interest in real property of such party in interest. Here, Debtor has defaulted in paying the Charges to the Board since April 2021, despite receiving rental income of $67,000.00 per month from its Tenant.[4] As the Arrears continue to grow, the Board lacks adequate protection of its lien against the Unit due to Debtor's continued refusal to pay the Board the Charges due under the By-Laws.

26. Additionally, this bankruptcy case was clearly filed in bad-faith. It is apparent that Debtor has no interest in complying with the Bankruptcy Code or Rules, and is not properly represented by legal counsel.

27. Additionally, pursuant to 11 U.S.C. §362(d)(2), an automatic stay may be terminated and/or modified if the debtor does not have any equity in the subject property and such property is not necessary to an effective reorganization.

28. Specifically, 11 U.S.C. §362(d)(2) provides, in relevant part:

> "On request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling modifying, or conditioning such stay… (2) with respect to a stay of an act against property under subsection (a) of this section if- (A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization"

11 U.S.C. §362(d)(2).

---

[4] *See* Milstein Declaration at ¶ 4.

29. Here, as discussed above, Debtor has little or no equity in the Unit, because the first mortgage lien of Axos, the prior lien of the Board (which was assigned to Axos), and the continuing charges owed by Debtor for the Unit.

30. As discussed in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Second Circuit enumerated the following factors that courts should consider in determining whether to grant stay relief to permit litigation to continue in another forum: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with a debtor's bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending the action; (6) whether the nonbankruptcy action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether a movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of the nonbankruptcy litigation; (11) whether the parties are ready for trial in the other proceedings; and (12) the impact of the stay on the parties and the balance of harms.

31. Furthermore, as discussed in subsequent cases: "Not all of the factors will be relevant in every case." *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142-143 (2d Cir. 1999). Additionally, each element does not need to be accorded equal weight. *In re Keene Corp.,* 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994). *See also, In re New York Medical Group, P.C.,* 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

32. Here, the relevant factors weigh heavily in favor of Board.

> Factor 1: Relief will result in a complete resolution of the issues between the parties both in regard to the bankruptcy case and the state court proceedings.
>
> Factor 2: Relief will not interfere with whatever other purpose Debtor has in filing a Chapter 11 case. Notably, the only purpose of Debtor's bankruptcy filing appears to be to delay the foreclosure sale. Even if there is another legitimate purpose, Debtor can continue to advance that purpose if this motion is granted.
>
> Factor 7: The state court proceedings will not prejudice the interests of any other creditor.
>
> Factor 8: The foreclosure judgment in the state court proceedings will not be subject to equitable subordination.
>
> Factor 9: The state court proceedings will not result in a judicial lien avoidable by Debtor.
>
> Factor 10: The interests of judicial economy and expeditious and economical resolution of the litigation lies in allowing the state court action to proceed.
>
> Factor 11: The proceedings in the state court Foreclosure Case were concluded with the entry of the final judgment of foreclosure and sale in favor of the Board (and subsequently assigned to Axos). Only the foreclosure sale of the Unit remains to be accomplished.
>
> Factor 12: The balance of harms is greater to the Board, which has endured Debtor's dilatory and protracted defaults and efforts to delay the foreclosure sale though this bankruptcy filing. Debtor, who has little or no equity in the Unit, will suffer no harm if the Board is permitted the stay relief sought herein.

33. By reason of the above analysis of the *Sonnax* factors, the Board is entitled to stay relief under § 362(d)(2). Debtor unquestionably filed this bankruptcy case in bad-faith to delay the foreclosure sale and prevent the Board from exercising its right to demand the Tenant pay its rent to the Board.

34. It is further respectfully requested that, under the circumstances of this case and considering that the foreclosure sale of Debtor's Unit was scheduled and pending when Debtor filed this bankruptcy case, it is respectfully requested that the 14 day stay under Bankruptcy Rule 4001(a)(4) be waived by the Court under Bankruptcy Rule 4001(a)(4).

## CONCLUSION

35. For all of the reasons set forth herein, together with the documentary evidence annexed hereto, it is respectfully submitted that the Court should grant Board's motion in its entirety, and pursuant to 11 U.S.C. §§ 362(d)(1) and (2) terminate, lift, and/or modify the automatic stay, so that the Board may exercise its rights to demand that the Tenant pay the Rent to the Board until the Charges are paid in full, and permit the foreclosure sale of the Unit to proceed, and that the 14 day stay under Bankruptcy Rule 4001(a)(4) be waived by the Court under Bankruptcy Rule 4001(a)(4), and further grant to Board such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 14, 2025

**BELKIN · BURDEN · GOLDMAN, LLP**

By: _____
Jay B. Solomon, Esq.
*Attorneys for Board-Creditor Board of Managers of 610 Park Avenue Condominium*
60 E 42nd Street, 16th Floor
New York, New York 10165
(212) 867-4466 ex. 497
Email: JSolomon@bbgllp.com